**TOWN OF HIGHLAND PARK et al. v. GUTHRIE et al. (No. 9197.)** *

(Court of Civil Appeals of Texas. Dallas. Jan. 24, 1925. Rehearing Denied Feb. 21, 1925.)

1. **Waters and water courses** ⬅═203(3)—**Statute regulating service rates held applicable to municipal plants.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 772b, requiring service rates of light and water plants to be equal and uniform is declaratory of the common law and applicable to municipal corporations as well as public utility corporations.

2. **Waters and water courses** ⬅═202—**Ordinance levying fee for water connection held void.**

Ordinance requiring a fee per front foot for water or sewerage connections, which applied only to part of municipality, *held* void in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 772b.

Appeal from District Court, Dallas County; Towne Young, Judge.

Action by E. B. Guthrie and others against the Town of Highland Park and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

H. P. Edwards and Spence, Haven, Smithdeal & Spence, all of Dallas, for appellants.

Liveley & Dougherty, of Dallas, for appellees.

JONES, C. J. The town of Highland Park was originally incorporated under the Town and Village Act. Subsequently, and in December, 1913, by due observance of the provisions prescribed by statute for so doing, said town duly accepted the provisions of title 22 of the Revised Statutes of 1911, and thereby became an incorporated city or town under the provisions of said title 22. A realty company platted the town embraced within the territory of the original incorporation, paved some of the streets, and constructed a waterworks plant sufficient to furnish water for domestic purposes through the mains and laterals laid within the territory of such town; the supply of water coming from artesian wells owned by said development company. This plant was operated by the Highland Park Water Company. Its capital stock and bonds were owned by the same persons who originally developed Highland Park as a residential district, and who sold all the lots in Highland Park that have been sold, and who are still making further developments.

Mt. Vernon is a residential district adjoining the original town of Highland Park on the north, and was laid out and improved and the lots put on the market by the Walker-Hamilton Investment Company. This company sold all the lots in Mt. Vernon under a guaranty of furnishing sewerage connection and water for domestic purposes. In order to carry out this guaranty, the company laid water mains and laterals within this territory, but secured water from a supply owned and furnished by the Southern Methodist University. All who were plaintiffs in the court below, and appellees in this court, reside in Mt. Vernon. After due compliance with all provisions of the law for so doing, Mt. Vernon was duly annexed to Highland Park, and the territory embraced in this addition thereby became a part of the municipality of Highland Park. This annexation was consummated on May 29, 1922, by a duly enacted ordinance by the municipality of Highland Park.

Acting under the power given it by the provisions of said title 22, the municipality of Highland Park, on May 1, 1922, purchased from the Highland Park Water Company the said waterworks plant, and thereby said municipality took upon itself the duty of furnishing water to its citizens. The water mains and laterals that had been laid in Mt. Vernon addition appear to have been of an inferior character and of small dimensions. At the time of the annexation of Mt. Vernon addition, these pipes were leaky and, in addition to being smaller than the pipes laid in Highland Park, were laid too shallow under ground to be used in connection with the Highland Park water system. At the time

of this annexation it was known, both by the municipality of Highland Park and by the citizens of Mt. Vernon, that these water mains were worthless to said municipality and could not be used for the purpose of making connections with the Highland Park water system.

The municipality of Highland Park, on December 28, 1922, enacted an ordinance controlling the manner in which the citizens of that municipality should receive their water supply. Section 7 of said ordinance reads as follows:

"Wherever the town of Highland Park shall hereafter lay or shall have laid water mains or sewer mains, before any premises shall be connected with the same and any consumer furnished water or sewerage service from the water and sewer mains so laid by the town, there shall be collected by the secretary and collector of waterworks and sewerage department from the owner and controller of such premises or the person desiring such service, a water or sewer main installation fee at the rate of one dollar ($1.00) per front foot of the premises to be connected with such water mains and at the rate of one dollar per front foot of the premises to be connected with such sewer main, either or both, and the frontage of the premises so to be charged shall be determined by the map or plat of such property which is recorded in the deed records of Dallas county, Texas."

It is agreed that the charge of $1 per front foot of the premises for water connection at the time of the trial of this case applied only to the citizens of Mt. Vernon addition, and did not apply to any one desiring water connection for any premises situated in the town of Highland Park, as that territory existed prior to the annexation of Mt. Vernon addition, so long as the old mains were used.

The property included in the purchase of the waterworks invoiced $289,000. The market value of this property, however, is not stated in the record. The purchase price paid the waterworks company for this property was $100,000, and it is agreed that it was worth much more than that sum. When the Highland Park territory was placed on the market for sale, it was already highly developed for residential purposes. The water system had been constructed and some of the streets paved, and, by reason thereof, higher prices obtained in the sale of the lots. At the time of the sale of the waterworks, it was considered by the owners that they had been paid for the water mains through the increased price received in the sale of the lots. This fact of the prior indirect payment for the cost of the water mains, and the further fact that they would be relieved from the necessity of drilling other wells needed, are given as the reason for the low price paid for the waterworks.

In order to consummate this purchase and make necessary improvements in the water-

works plant, the town of Highland Park issued bonds in the sum of $150,000. With the proceeds of this bond issue, the price was paid for the waterworks, and an additional well was drilled and other machinery installed. Another bond issue in the sum of $125,000 was voted by the municipality. on January 16, 1923, which was used in drilling another well and in making other improvements, including the laying of a water main in the Mt. Vernon addition, running north on Fairfield street from the north boundary line of the original Highland Park territory to a street in Mt. Vernon addition running east and west, thence east on said street to the Highland Park high school, which is in Mt. Vernon addition. This main is 6,200 feet in length in the territory of the Mt. Vernon addition. The high school could have been reached by a main only 800 feet in length, and it is agreed that the laying of said main was to accommodate Mt. Vernon addition. The lateral mains were laid in Mt. Vernon addition and paid for out of the general fund. The installation fee levied by the said ordinance applies now only to this main and its laterals. This installation fee of $1 per front foot the appellees, who are thirteen citizens residing in said Mt. Vernon addition, refused to pay, and were denied water connection for their premises solely because of such refusal. They thereupon brought this suit in the district court of Dallas county, praying for a mandatory injunction compelling the municipal authorities to make water connection with their premises, tendering performance of all the other conditions required by ordinance for securing such water connection. The municipal corporation of Highland Park, the mayor and councilmen, were made parties defendant to this suit. The allegations of fact in appellees' petition are full and complete, and sufficient to grant them the relief prayed for, unless such relief should be denied because of the defensive matters alleged in appellants' answer. This answer is also full and complete, but the gist of it is that the charge of $1 per front foot made a condition precedent to connecting appellees' premises with the water mains is authorized by the ordinance above quoted, and such ordinance is a legal and valid enactment, and such charge, under the conditions that brought forth the ordinance, is a reasonable and not an arbitrary charge. Briefly stated, the material allegations to sustain the validity of the said ordinance are that the town of Highland Park had no funds with which to build new water mains, and that same had to be done by the bond issue above stated; that the bond issue is a tax on all the property situated within Highland Park, a very large portion of which is necessarily paid by the owners of property residing within the territory of the original corporation; that the inhabitants of such territory had paid for

the water mains within that territory by the increased price that was placed on the lots they purchased from the then owners of the waterworks, and also the developers of the town; and that the charge of $1 per front foot is a just charge against the residents of Mt. Vernon because they had not paid anything in the purchase of their lots on the water mains in said old town; that the reduced price at which the waterworks was sold was in part because of the fact that the said citizens of the old town had already paid the original water company for those mains, and it was unfair to such citizens for the inhabitants of Mt. Vernon to receive this benefit without paying anything therefor.

It will thus be seen that the real issue joined, and the one that is controlling in this case, is whether or not, in view of the circumstances, the said ordinance that requires that residents of the Mt. Vernon addition to pay the installation charge not required of the other residents of the city of Highland Park is a valid enactment. The trial court entered a judgment, awarding to appellees the relief prayed for, and thereby necessarily held said ordinance invalid. The appeal calls in question the correctness of this holding of the trial court.

[1] Articles 772b of said title 22 of the Revised Statutes (Vernon's Sayles' Ann. Civ. St. 1914) has, among other provisions, one declaring that:

" * * * The rates charged for services furnished by any of the said systems [lighting or water] shall be equal and uniform * * * and there shall be charged and collected for such services a sufficient rate to pay for all operating, maintenance, depreciation, replacement, betterment and interest charges, and for interest and sinking fund sufficient to pay any bonds issued to purchase, construct or improve any such systems or of any outstanding indebtedness against same."

This enactment is the fundamental law of the town of Highland Park, and its governmental body is without power to enact any ordinance in reference to this subject that is not in harmony with this statute. The quoted provision of said article 772b in reference to a uniform charge for rates is simply declaratory of the common law on this question, and shows that the policy of our state is that the common-law rule in reference to the furnishing of water to the inhabitants of a municipality by either a public service corporation or the municipal corporation itself, shall be in harmony with the rule as it exists under the common law. So, without special reference to whether the mandate of said article, that the rates charged for the service shall be equal and uniform, is broad enough in its application to include the installation fee levied by said ordinance against certain of the citizens of Highland Park before they will be allowed water service, we will discuss the question as governed by the common-law rule.

What is such rule of law when applied to this case in which two citizens of Highland Park, one residing in the old territory of Highland Park and the other in the new territory of Mt. Vernon addition, make application to the proper municipal authorities, each to have his premises, fronting 50 feet on a municipal water main, connected with such main? It is that these two citizens must be dealt with equally and given the same service on equal terms, and that the charge for the service asked must be the same to both. McQuillin Municipal Corporations, vol. 8 (sup.) § 1697; City of Galveston et al. v. Kenner, 111 Tex. 484, 240 S. W. 894.

[2] Can the validity of this ordinance be sustained under this rule? Under the terms of the ordinance the citizen residing in the Mt. Vernon addition is required to pay a fee of $50 for this service that cannot be exacted from the other citizen. This is unjust discrimination, unless there are such special circumstances existing in reference to one of the applicants that would warrant the placing of the applicants in a different class in respect to the charge for such service. Are there such special circumstances in this case?

Appellants contend that there exist such special circumstances sufficient to justify the ordinance in placing the owners of real property situated in the old territory of Highland Park in a class exempt from this charge and the owners of real property in Mt. Vernon addition in a class subject to this charge, and therefore no unjust discrimination is made between the two classes.

It is urged, first, that, because the waterworks plant purchased by the town of Highland Park with its mains laid in the old territory of said town so enhanced the value of the lots that the owners were enabled to exact from the purchaser a higher price for each of said lots than otherwise could have been obtained, and that thereby each purchaser of a lot in the old territory in paying this enhanced price for his lot remunerated, to a certain extent at least, the owners and developers of said territory for their outlay in constructing the waterworks, ample warrant is given for the discrimination made by the ordinance in favor of the owner of a lot in the old territory. It is urged, second, that, because the owner of the waterworks, having thus received remuneration for the outlay in laying water mains and being relieved from further development of the waterworks system, could and did sell such system to the town of Highland Park at much less than its value, this also justifies the discrimination made by the ordinance. The conclusion is drawn by appellants that the installation fee exacted by the ordinance from the citizen of the Mt. Vernon addition had

already been paid in the manner above stated by the citizen in the old territory, and that, as the town of Highland Park reaped the benefit of this through the low price paid, there is no unjust discrimination made by the ordinance.

Is this position tenable? If it is, then the trial court erred in holding the ordinance void. It is not contended that the purchaser of a lot in the old territory, by paying the increased price of his lot because of being furnished water facilities, thereby acquired any title to interest in the existing waterworks plant. In purchasing a lot so situated the purchaser only acquired the right to be served with water precisely on the same condition that every other like purchaser would be served. If the developers of the town of Highland Park and the original owners of the water plant had sold every lot platted by such developer at the time the waterworks was sold, its ownership of the waterworks would not have been affected thereby. When the town of Highland Park became the owner of the waterworks system, it became such owner with its interest and title unaffected by the fact that the waterworks system had enabled its owner to sell lots at a higher price than it otherwise could have done. The sale and purchase of the lots were purely business transactions, in which every element that made them more desirable as residence lots entered into the price paid by the various purchasers. We therefore conclude that the mere fact that there was a waterworks system in the old territory of Highland Park before the lots were sold, and that this caused the lots to sell for a higher price, does not give to the owner of a lot in such territory any right to a discrimination in his favor by the town of Highland Park in the operation of its waterworks system.

Does the fact that the town of Highland Park purchased the waterworks for less than its value and before the Mt. Vernon addition was annexed authorize the discrimination made by the ordinance? We do not think so. The item of an enhanced price paid for a lot because of water service, which constituted one of the elements of reducing the price asked and paid for the waterworks, did not give the owner of such a lot the right to have his premises connected with the water system. Such owner in this respect enjoyed no higher right than would have been his had he owned the lot before the water system was constructed. The purchase price was paid by a bond issue and the bonds must be paid by taxation levied on all the citizens of Highland Park, either by the levy of a property tax or by an increased water rate. When the municipality purchased the waterworks it did so for the benefit of the entire town of Highland Park, and that without reference to when a given territory became, or would become, a part of such municipality. There went with this purchase the duty to supply water impartially to all reasonably within reach of the pipes and mains of the water system, without discrimination between persons similarly situated. When the Mt. Vernon addition was annexed the citizens residing therein became at once entitled to all of the rights and privileges of the other citizens of Highland Park. This rule of law was declared by section 2 of the annexation ordinance, but existed without such declaration. The emergency clause of the annexation ordinance gave as a reason for the immediate passage of such ordinance the fact that the inhabitants of the annexed territory were without fire protection. After the passage of this annexation ordinance, the town of Highland Park, in the performance of its duty to give this fire protection and to furnish to the inhabitants of the annexed territory water service, voluntarily laid a water main through this territory 6,200 feet in length. This improvement in the system, as well as the drilling of an additional well, was paid for out of the proceeds of a bond issue of $125,000. The debt thus created must be paid by all the inhabitants of the municipality, including, of course, those in Mt. Vernon addition. The case presents the condition of a municipality purchasing a waterworks plant through the means of a bond issue, laying additional mains in an annexed territory through the means of another bond issue, and then enacting an ordinance prescribing an installation fee of $1 a front foot before water connection will be allowed with the new main in the annexed territory, and exempting property along the old mains that is not connected from such charge. This is clearly an unjust discrimination and violative of the rule of common law governing the administration of a municipal owned water system. It is also violative of article 772b of the 1911 Revised Statutes, which is the fundamental law of the municipality, and declares that rates charged for services furnished by municipal water system shall be equal and uniform. It follows that the portion of the above-quoted ordinance which levies a fee of $1 per front foot for water or sewerage connection is invalid, and that this case should be affirmed.

Affirmed.