**G. R. HATTEN et al., Appellants,**

**v.**

**The CITY OF HOUSTON, Appellee.**

No. 14255.

Court of Civil Appeals of Texas.

Houston.

Oct. 17, 1963.

Rehearing Denied Dec. 19, 1963.

528

Lloyd M. Lunsford, South Houston, and
Louis W. Graves, Jr., James T. Russell,

and Graves, Cottingham & Russell, Houston, for appellants G. R. Hatten, James K. Freeman, Russell Kiehn and W. Joe Norris.

David Crews, Conroe, and Sam Freas, Livingston, for appellants M. L. & Lamar Walker.

R. H. Burks, City Atty., and G. Gordon Whitman, Senior Asst., Vinson, Elkins, Weems & Searls, Victor W. Bouldin, Houston, for appellee.

COLEMAN, Justice.

This is a special statutory proceeding instituted by the City of Houston, Texas, under the provisions of Article 717m, Vernon's Ann.Tex.St., seeking a declaratory judgment establishing the validity of $14,000,000.00 in Water System Revenue Bonds and the proceedings had in connection with the issuance thereof. The proceeding is one in rem and citation is by publication.

By order of the trial court an earlier suit seeking to enjoin the issuance of the bonds and a water rate ordinance of the City was consolidated with this cause, the order reciting: "(c) that all issues in Cause No. 607,354–A which are litigable in Cause No. 610,652, shall be consolidated and jointly tried in said Cause No. 610,-652, it being expressly provided that this order shall not be deemed to limit or affect the determination by the respective judges trying said Cause No. 610,652 or 607,354–A of the question of the proper issues which may be litigated in said causes." Cause No. 607,354 was instituted by a group of citizens, who subsequently filed an answer in this cause and who will be referred to herein as the "Hatten defendants."

Subsequently M. L. and Lamar Walker filed an answer in this cause, in which they alleged that they are land owners in Polk County, Texas, and that their real estate "would be affected by the securities described * * * and that said Defendants * * * would be affected in other ways by said securities, and by the issuance and sale of same. That said Defendants fall within the class of persons to whom the order and notice of this suit was addressed."

As an answer to a motion for summary judgment, the Walkers filed an affidavit in which they stated that they owned an interest in a business in the City of Houston and an interest in real estate in the City of Houston. In answer to requests for admissions of fact they refused to admit that they owned no real estate in the City of Houston and were not water customers of said City, and in a sworn answer to the motion for summary judgment stated affirmatively that they were owners of real estate in the City of Houston and owned an interest in a business which is a water customer of the City. All of these pleadings were filed by David Crews, an attorney for the Walkers.

Prior to the trial of this case the Walkers filed proper affidavits to support a motion for continuance on the ground that their attorney of record, David Crews, was a member of the Legislature of the State of Texas, and that said Legislature was in session. The motion was denied and the matter proceeded to trial in the absence of the said David Crews. In his findings and conclusions the trial court said: "M. L. Walker and Lamar Walker alleged no litigable interest in the subject matter of this proceeding and are not proper parties to this proceeding."

Section 3 of Article 717m, V.A.T.S., provides in part:

"The judge of the District Court wherein the petition is filed, shall, upon the filing and presentation thereof, make and issue an order in general terms in the form of a notice directed to 'all property owners, taxpayers, citizens and others having or claiming any right, title or interest in any property or funds to be affected by the issuance of the Securities or affected in

any way thereby,' requiring in general terms and without naming them, all such persons and the Attorney General of Texas to appear at or before 10 o'clock A.M. on the first Monday after the expiration of forty-two (42) days from the date of issue of said order, and show cause why the prayers of the petition should not be granted and the proceedings and the Securities validated and confirmed as therein prayed. * * *"

Section 5 provides in part:

"By the publication of said order, all property owners, taxpayers, citizens or others having or claiming any right, title or interest in or against the petitioner or property subject to taxation thereby or otherwise affected by or interested in the issuance of the Securities described in the petition, shall be considered as and are made parties defendant to said proceedings, and the court shall have jurisdiction of them to the same extent as if individually named as defendants in said petition and personally served with process in the cause."

Section 6 provides:

"Any property owner, taxpayer, citizen or person affected by or interested in the issuance of the Securities may become a named party to said proceedings by pleading to the petition on or before the time set for hearing as provided in Section 3, or thereafter by intervention upon leave of court. At or after the time, and at place designated in the order for hearing, the judge shall proceed to hear and determine all questions of law and fact in said proceedings and may make such orders as to the proceedings and such adjournments as will enable him properly to try and determine the same and to render a final decree therein with the least possible delay."

From a literal interpretation of these sections it would appear that any person,

who owns any property in the City or who claims to be affected in any manner by the issuance of the securities, is given a statutory right to make himself a named party to the proceeding. By the provisions of Sec. 8 of the statute a judgment rendered in this cause will constitute a permanent injunction against the institution of any sort of legal proceeding contesting the validity of the securities or of the provisions made for the payment of the same. It may well have been the intention of the Legislature that all who consider themselves affected by the issuance of securities would have the right to appear and answer in a proceeding under this statute, whether their claim of interest is well founded or not. However, we are not content to rest our decision on this basis.

■ Appellee forcefully urges that in passing on the Walker motion for continuance the trial court could properly determine whether one presenting such a motion is a member of the class sued so as to have standing to urge it. The Walkers were referred to as "defendants" in many pleadings filed in this proceeding. Their bill of exceptions as approved by the trial court states that no objections to the form or contents of the motion for continuance and the affidavits filed in connection therewith were made. While the trial court in his conclusions of law found that the Walkers alleged no litigable interest in the subject matter of the proceeding and were not proper parties, their appearance was noted in the judgment and their rights, if any, are adjudicated thereby. The denial of the motion cannot be supported on the basis of a finding of "no litigable interest."

Rule 45, Texas Rules of Civil Procedure, provides that the pleading of a legal conclusion shall not be a ground for objection when fair notice is given by the allegation as a whole. Rule 90, T.R.C.P. provides that every defect, omission, or fault in a pleading, either of form or of substance, which is not specifically pointed out by motion or exception in writing shall be

deemed to have been waived by the party seeking reversal on such account.

■ The Walker defendants pled the conclusion that they would be affected in ways other than by reason of their ownership of Polk County property by the issuance and sale of these securities. They also alleged generally that they were within the class of persons to whom the notice of suit was addressed. Since the City did not contest these allegations by special exceptions, motion to strike, or otherwise, the conclusions so alleged are sufficient if evidence would be admissible under such allegations to prove that the Walkers are proper named defendants under the terms of Article 717m. Broussard v. Tian, Tex. Civ.App., 290 S.W.2d 372, reversed on other grounds 156 Tex. 371, 295 S.W.2d 405; Mizell Const. Co. & Truck Line, Inc. v. Mack Trucks, Inc., Tex.Civ.App., 345 S.W. 2d 835; Tolson v. Carroll, Tex.Civ.App., 313 S.W.2d 131. The pleadings were sufficient when tested by this rule.

■ The statement of facts shows that the trial court held as a matter of law that this proceeding is not a civil suit and that Article 2168a has no application to a special statutory proceeding. In this we think the court erred. In National Life Co. v. Rice, 140 Tex. 315, 167 S.W.2d 1021, the court defined a "suit" as follows: "A 'suit' is 'any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law a ords him.' Watson Co. v. Cobb Grain Co., Tex. Com.App., 292 S.W. 174, 176, quoting the language of Chief Justice Marshall in Weston v. City Council of Charleston, 2 Pet. 449, 7 L.Ed. 481. It is the prosecution of some demand in a court of justice. Ex Parte Towles et al., 48 Tex. 413, 433." Here the City pursues in a court of justice a remedy afforded it by law, its object being to finally determine a pending suit attacking the validity of bonds it proposes to sell and to enjoin the institution of future suits of a similar nature. The fact that by statute a special method of procedure is available

to the City seeking relief of this nature does not change the nature of the action. It remains a civil suit subject to the terms of Art. 2168a. Ramsey v. Gardner, 154 Tex. 457, 279 S.W.2d 584.

■ The trial court erred in failing to sustain the motion for continuance and in proceeding with the trial thereafter. Art. 2168a, Rev.Civ.Stat.; Mora v. Ferguson, 145 Tex. 498, 199 S.W.2d 759; Government Services Ins. Underwriters et al. v. Hon. Herman Jones, District Judge, 6 Tex. S.Ct. J. 487. Since this is a proceeding in rem, reversal of this judgment as to the Walker defendants requires that it be reversed as to the Hatten defendants as well. Since, however, questions raised in their briefs by the Hatten defendants will probably recur in another trial, we deem it necessary to discuss them.

■ The Hatten defendants' request for a jury trial was denied because Article 717m provides that all questions of law and fact arising in the proceeding shall be determined by the judge trying the case. It is generally considered that the provisions of Art. I, Sec. 15 and Art. V, Sec. 10, of the Texas Constitution, Vernon's Ann.St. providing that the right of trial by jury shall remain inviolate, apply only to those issues and causes which, either by the common law or by statute existing prior to the adoption of the Constitution, were tried to a jury. However, the Supreme Court of Texas, in White v. White, 108 Tex. 570, 196 S.W. 508, said: " 'In cases where the right existed prior to the Constitution, it (trial by jury) cannot be denied, and this applies to cases of a similar character arising under statutes enacted subsequently to the adoption of the Constitution.' 24 Cyc. pp. 101, 102, and cases cited."

Art. V, Sec. 10, provides: "In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury * * *" If, therefore, a proceeding under Art. 717m is a "cause", that portion of Art. 717m providing that all

issues of fact be determined by the judge is unconstitutional. In Walsh v. Spencer, Tex.Civ.App., 275 S.W.2d 220, the court said:

"However, the provisions of Art. 5, § 10, of our Constitution are much broader than those of Art. 1, § 15, insofar, as the trial of causes in the district court is concerned * * * The meaning of this section was discussed by Chief Justice Gaines in Tolle v. Tolle, 101 Tex. 33, 104 S.W. 1049, 1050. He said: 'Language cannot be more comprehensive than this. Hence, if a probate proceeding is properly styled a "cause", this section undoubtedly gives a right of trial by jury. Bouvier defines a "cause" as: "A suit or action; any question civil or criminal contested before a court of justice." The questions in this case are certainly questions contested before a court.'

"There are a number of proceedings in the district courts, however, in which a trial by jury may be denied. Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W.2d 227 (Proceeding to cancel license to sell liquor); Hammond v. Ashe, 103 Tex. 503, 131 S.W. 539 (Primary election contest); McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278 (Contest of local option election); Ex parte Giannatti, Tex.Civ.App., 189 S.W.2d 191 (Committing mentally ill persons to state hospital for period of ninety days); Hickman v. Smith, Tex.Civ.App., 238 S.W.2d 838 (adoption proceedings); Burckhalter v. Conyer, Tex.Com.App., 9 S.W.2d 1029; Erwin v. Williams, Tex.Civ.App., 253 S.W.2d 303 (Habeas corpus for custody of child). However, none of the reasons or principle upon which these cases have been decided is involved here."

We are of the opinion that trial by jury cannot be denied in this case. The principles on which the cases denying trial by jury were decided have no application here.

It appears a jury trial has been denied litigants in appeals from decisions of administrative boards because such appeals do not constitute a civil suit or cause of action. This was the holding in Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W. 2d 227, where the court quotes with approval from State v. Lone Star Gas Co., Tex.Civ.App., 86 S.W.2d 484, writ refused, a case appealed to the district court under a statute providing for a trial de novo, as follows:

"'In such cases the Legislature does not vest in courts the administrative function of determining whether a license, permit, or certificate of convenience or necessity should issue, but merely gives the courts authority to determine whether the action of the administrative board or commission is (a) beyond the power it could constitutionally exercise, or (b) beyond its statutory power, or (c) based upon substantial evidence.'"

These matters are questions of law which could not properly be submitted for the determination of a jury. The court, however, based its decision, that appeals from the cancellation of a permit to sell liquor under the Liquor Control Act are not civil suits or causes of action, on the case of State v. De Silva, 105 Tex. 95, 145 S.W. 330, which held that the revocation of such a license by a county judge was a ministerial or administrative, rather than a judicial, action. In Hernandez v. State, Tex. Civ.App., 135 S.W. 170, writ dism., the county judge, after a hearing, cancelled a liquor license. The court dismissed an attempted appeal for lack of jurisdiction in that the county court lacked jurisdiction for the reason that the license revoked could not be of "such value as would form a basis for a civil case within the jurisdiction of the County Court."

Jury trial has also been denied in suits contesting the result of an election. In Williamson v. Lane, 52 Tex. 335, the court held that such a contest was not a civil case

and, therefore, the Legislature was without power to confer jurisdiction on the Supreme Court without disregarding the positive restriction imposed upon its jurisdiction by the Constitution and dismissed the appeal. The basis for the decision was that the determination of the result of an election is in the nature of a political question "to be regulated, under the Constitution, by the political authority of the State." In Odell v. Wharton, 87 Tex. 173, 27 S.W. 123, the court held that an amendment to the Constitution conferring jurisdiction on the district courts to try "contested elections" was not self-executing, and that since a contested election is not a civil suit or cause, it could not be tried by the proceedings had in such cases.

■ The right to a jury trial has been denied in habeas corpus proceedings for the custody of a child. Burckhalter v. Conyer, Tex.Com.App., 9 S.W.2d 1029; Pittman v. Byars, 51 Tex.Civ.App. 83, 112 S.W. 102. The Commission of Appeals based their decision in the Burckhalter case on Pittman v. Byars, supra, in which the court said:

"When a statute or Constitution, after having been once construed by a court of final jurisdiction has been re-enacted without material change, such construction becomes a part of the new law or construction (sic) * * * The Constitution preceding our present one had a similar provision to the one under consideration. Both before and since the adoption of the present Constitution, it has been the uniform practice in this state for habeas corpus cases to be tried before the court, and not by a jury, * * * the court below did not err in refusing to grant appellants a trial by jury."

Habeas corpus suits are civil cases. Harbison v. McMurray, 138 Tex. 192, 158 S.W. 2d 284.

In the case of Hickman v. Smith, Tex. Civ.App., 238 S.W.2d 838, 839, writ ref.,

the court said that the right of trial by jury as guaranteed by the Constitution of Texas is limited to the right as it existed at Common Law or as provided by statutes in effect when our Constitution was adopted in 1876. The court then found that adoption was unknown to the Common Law and that the adoption statute effective in 1876 had no provision for a jury trial. The court then held that, since Art. 46a "validly and plainly makes it the duty of the trial court or judge, as distinguished from a jury, to grant or deny a petition for adoption as in his discretion the facts and welfare of the child require," the trial court did not err in denying a trial by jury. Art. V, § 8 of the Constitution of Texas, provides that the district court shall have original jurisdiction and general control over minors "under such regulations as may be prescribed by law."

■ We have reviewed these cases carefully for the reason that we hesitate to declare unconstitutional an act of the Legislature plainly designed to secure speedy adjudication of causes in which the public has an unusual interest. We are not unaware of the great public interest in the issues basic to this suit or of the necessity for careful planning to secure a supply of water adequate for the future needs of the City of Houston. However, we cannot sanction the denial of the right to a trial by jury in any case where it reasonably appears to be guaranteed by the provisions of our Constitution, although the public interest would be served by a speedy adjudication of the issues involved and trial by jury would necessarily involve considerable delay.

■ The proceeding, designated in Art. 717m as a suit for declaratory judgment, is a cause of action or a civil suit. A cause of action has been defined as: "A suit or action; any question civil or criminal contested before a court of justice." Tolle v. Tolle, 101 Tex. 33, 104 S.W. 1049; Boothe v. Durrett, Tex.Civ.App., 343 S.W. 2d 553, ref., n. r. e.; City of Big Spring v.

Garlington, Tex.Civ.App., 88 S.W.2d 1095. The remedy afforded by the general statute authorizing declaratory judgments is an "action". Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709; City of San Antonio v. United Gas Pipe Line Company, Tex.Civ.App., 354 S.W.2d 217. This definition of "cause of action" has been approved in many jurisdictions, and it is generally held that, in a legal sense, "action," "suit," and "cause" are convertible terms. Nylan v. Renhard, 10 Colo.App. 46, 49 P. 266; Zilz v. Wilcox, 190 Mich. 486, 157 N.W. 77; Schmalz v. Arnwine, 118 Or. 300, 246 P. 718; Cheney v. Richards, 130 Me. 288, 155 A. 642; Gibson v. Sidney, 50 Neb. 12, 69 N.W. 314; State Road Department of Florida v. Crill, 99 Fla. 1012, 128 So. 412; Blyew v. United States, 13 Wall. 581, 80 U.S. 581, 20 L.Ed. 638.

In Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641, the Supreme Court of Texas, in an opinion declaring unconstitutional a statute authorizing a species of advisory opinions, held that the Supreme Court had appellate jurisdiction *only* of questions of law arising in *cases* of which the Courts of Civil Appeals have appellate jurisdiction (except in instances where it has original jurisdiction). The Court quoted 3 Tex. Jur., p. 65, § 22: " 'Appellate jurisdiction is the power and authority conferred upon a superior court to rehear and determine— that is to review—causes which have been tried in inferior courts. * * *'" The Court further said:

"When the Constitution declares that our appellate courts shall have and exercise *original* and *appellate* jurisdiction, it means those types of *original* and *appellate* jurisdiction which from time immemorial the common-law courts have exercised. Beyond the limits of original and appellate power as comprehended by the common law the Legislature is without constitutional authority to confer jurisdiction, except in so far as the common law has been abrogated or modified directly or by necessary implication by the Con-

stitution itself. Harrell v. Lynch, 65 Tex. 146, 150; Ex Parte Towles, 48 Tex. 413, 414; Ex Parte Ginnochio, 30 Tex.App. 584, 18 S.W. 82; Gibson v. Templeton, 62 Tex. 555; In re House Bill 537 of Thirty-Eighth Legislature, 113 Tex. 367, 256 S.W. 573; Ex Parte Whitlow, 59 Tex. 273; O'Brien v. Dunn, 5 Tex. 570."

The necessary implication of this holding is that there is no power in the Legislature to require or authorize the appellate courts of this State to act, as a court, on any matters other than cases susceptible of adjudication unless authorized by the Constitution. A trial court must have finally determined issues of fact or law in a *cause* before this Court would have jurisdiction to review its judgment.

In any event it is apparent that the Legislature, in enacting Article 717m, intended to provide a method of adjudicating the validity of public securities which would be more efficient and quicker than the procedures theretofore available. There is no indication that it was intended that the procedure authorized would not constitute a civil case or a cause of action. The language of the Act indicates a contrary intention. The Act authorizes the institution of proceedings to secure a declaratory judgment. The proceeding thus instituted is an "action". City of San Antonio v. United Gas Pipe Line Co., Tex.Civ.App., 354 S.W.2d 217.

In this Act the following words and phrases appropriate to a "cause of action" or "civil suit" were used by the Legislature: "may institute suit for declaratory judgment," "defining the parties to such suits," "authorizing the entry of decrees and judgments in such causes," "as a class action," "in the litigation," "the court shall proceed to a final determination of the cause." It is noteworthy that Sec. 7 of this article provides: "Such appeal shall take priority over all *other* civil cases pending in said court except habeas corpus." (emphasis added)

A study of the petition in Cause No. 607,-354-A and the answer filed by the same parties in this case will demonstrate that the issues of law and fact are substantially identical. This indicates that this special proceeding is a "cause of action" similar, at least, to the previously filed suit in equity. While in many states jury trials were denied in chancery proceedings, this has never been the rule in Texas.

 That portion of Art. 717m providing that all issues of fact be determined by the trial court is unconstitutional in that it denies a litigant in the district court the right of a trial by jury, contrary to the provisions of Art. V, Sec. 10 of the Constitution of Texas. The remainder of the statute is not invalid since a complete and workable law remains and the apparent purpose of the Legislature will not necessarily be defeated. Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619; Kleiber v. McManus, 66 Tex. 48, 17 S.W. 249.

 Appellee has filed a motion to strike the statement of facts for the reason that it was not timely filed. Since, as we have held, this action is a civil action, it is governed by the Rules of Civil Procedure promulgated by the Supreme Court except insofar as specific changes are made by Art. 717m. Gonzalez v. Rodriguez, Tex.Civ. App., 250 S.W.2d 253; Rule 2, T.R.C.P.

Art. 717m provides that any party to the proceeding may appeal therefrom to the Court of Civil Appeals within twenty days after the entry of such decree. Such an appeal is given priority over all other civil cases except habeas corpus. By Section 4 the trial court is authorized to make certain orders "as may tend to avoid unnecessary costs or delays * * *." In Section 6 it is provided that "the judge * * * may make such orders as to the proceedings * * * as will enable him *properly* to try and determine the same and to render a final decree therein *with the least possible delay*." (emphasis added) Section 7 pro-

vides that the Supreme Court shall have authority to review the decisions of the Courts of Civil Appeals "in the manner, time, and form applicable in other civil causes * * *."

 The legislative intent to provide for a speedy termination of this type of litigation is apparent. It is appellee's position that, in view of this intent, the provision of Art. 717m providing that "an appeal may be taken * * * within twenty days * * . *," requires that notice of appeal, filing of appeal bond, and filing of record be complete within that time. We think that that provision means that the appeal must be perfected within twenty days. An appeal is perfected by giving notice of appeal and filing an appeal bond when such a bond is required. Rule 363, T.R.C.P. While this twenty day provision increases the time for giving notice of appeal (Rule 353, T.R.C.P.), it decreases the time allowed for filing the cost bond by Rule 356, T.R.C.P., from thirty days to twenty days. Since Art. 717m contains no specific time limit within which the transcript and statement of facts must be filed, the provisions of Rule 386, T.R.C.P., apply. Appellants filed both the statement of facts and the transcript well within the time limits established by this rule.

 Should it appear that the legislative intent to provide for a speedy disposition of these matters is so clear as to require an interpretation of Art. 717m in accordance with appellee's view, we would hold that the requirement that the record be filed within twenty days is directory and that this Court has juridiction to grant a motion for extension of time, showing good cause, filed within the twenty day period. Such a motion has been filed in this case. This statute does not expressly, or by inference, deny to the Courts of Civil Appeals jurisdiction to extend the time for filing. The decisions holding jurisdictional the time limits prescribed by Rule 386, and the statutes preceding the rule, do not control this case, since they can be ex-

plained on the basis that the rule (or statutes) prescribes the *only* conditions under which the Court has power to grant an extension of time. C. S. Hamilton Motor Co. v. Muckleroy, Tex.Civ.App., 46 S.W.2d 451 (dissenting opinion specifically approved by the Supreme Court of Texas in Hunter v. Moore, 122 Tex. 583, 62 S.W.2d 97); Red v. Bounds, 122 Tex. 614, 63 S.W.2d 544; Walker v. Cleere, 141 Tex. 550, 174 S.W.2d 956. Since this statute is silent on conditions under which extensions of time could be granted, we could not presume that the Legislature intended that extensions could never be granted even though, as a practical matter, it would be impossible for the record to be prepared within the time specified. If the Rules of Civil Procedure, promulgated by the Supreme Court, are not applicable to this action, this Court would have inherent power to determine the procedure to be followed in the absence of a procedure established by the Legislature.

■ Art. 717m provides that the petition for declaratory judgment shall set out the county or counties in which the proceeds of the securities, or any part thereof, are to be expended and "all other pertinent matters." The principal purpose of such an allegation is to give notice to the residents of the counties in which the bond proceeds are to be expended in order that they might appear and answer to the petition.

■ Here the City alleged that the proceeds were to be expended in Harris County, "and the City Council may authorize a portion of such proceeds to be expended in Polk, San Jacinto, Walker, and Trinity Counties, Texas." Such an allegation constituted a substantial compliance with the statute. The purpose of requiring such an allegation was met by this wording, adopted by the City in an effort to avoid alleging action taken in excess of its Charter authority. We are also of the opinion that the petition is sufficiently complete in its allegation of "all other pertinent matters."

Art. 717m specifically makes the "terms" under which securities are to be issued, and the legality of all proceedings taken or proposed to be taken in connection with the issuance of the securities, matters to be adjudicated in this declaratory judgment proceeding. The City alleged that its bond Ordinance No. 62–1367, a copy of which was attached to the petition, was duly adopted; that it is valid and fully authorized by law. The bond ordinance contains the following provision:

"The City has heretofore entered into a contract with the Trinity River Authority of Texas, dated September 14, 1959, relating to the cooperation of the City and that Authority in the joint development of a water supply from the Trinity River. The City has also entered into a contract with the San Jacinto River Authority of Texas, dated March 11, 1960, relating to the cooperation of the City and that Authority in the joint development of a water supply from the San Jacinto River. The City expects to enter into a contract with the United States of America and the Trinity River Authority of Texas in regard to the construction and operation of a salt-water barrier dam and reservoir near the mouth of the Trinity River. Copies of each of the two existing contracts with the Authorities are on file in the office of the City Secretary and reference is made to each of said contracts for full particulars. The City's portion and interest in and to the water supply properties which are to be constructed or acquired by the City under the terms of each and all of said contracts shall constitute and become a part of the System, subject to the terms and provisions of said contracts and each of them."

The trial court sustained a motion in limine, the effect of which was to exclude all testimony concerning these contracts. At the trial the contracts were offered in evidence and were excluded, as was other

testimony relative to the contracts. Appellants contend that the Trinity River Contract is invalid.

■ The rights acquired under the Trinity River contract are made part of the water system of the City of Houston by the bond ordinance and, therefore, are subject to the provisions of that ordinance pledging the revenues and properties of the water system as security for the protection of the purchasers of the bonds. An adjudication of the validity of the bond ordinance requires a determination of the validity of the revenues and property pledged as security and, therefore, of the Trinity River contract. For the same reason the validity of the San Jacinto River contract is at issue, and the trial court erred in excluding testimony pertaining to the validity of these contracts. Necessarily the contract instruments would be relevant and admissible.

This Court holds that the trial court erred in refusing to admit evidence pertaining to the legality of the Trinity River contract, but we express no opinion on its validity in view of the fact that the ruling of the trial court on the motion in limine and objections at the trial made it unlikely that the questions raised were fully developed. However, since the validity of the contracts must be determined in order to establish the validity of the securities, the question of whether the issuance of the securities can be enjoined on pleading and proof that the City intends to use the proceeds of the bonds for the purpose of financing the Trinity River contract becomes immaterial.

Appellants have alleged that certain ordinances enacted by the City of Houston, increasing water rates, were not based on any need or necessity for increased revenues and were unreasonable, arbitrary, capricious, oppressive and discriminate against domestic water users in favor of industrial water users of Harris County and the Trinity River Authority. They also alleged that the rates were increased by the City for the purpose of acquiring surplus revenues for use in financing the $14,000,000.00 water system revenue bond issue which they contend is invalid on several grounds, one of which being that the City intends to use $9,000,000.00 of the proceeds to fulfill obligations assumed under the Trinity River Authority contract. They alleged that the water rate ordinances are invalid because the rates are unreasonable and oppressive; because the rates are discriminatory; and because the ordinances were enacted pursuant to a "scheme, device, and design" on the part of the Mayor and City Council of Houston to finance an invalid contract.

■ The general rule is well established that when a municipality undertakes to furnish a public service, such as the supplying of water to consumers, it acts in its proprietary, and not its governmental, capacity, and it is obliged to serve its customers at reasonable and non-discriminatory rates. Hicks v. City of Monroe Utilities Comm., 237 La. 848, 112 So.2d 635; Kliks v. Dalles City, 216 Or. 160, 335 P.2d 366; Waterworks and Sanitary Sewer Board v. Dean, 260 Ala. 221, 69 So.2d 704; Delony v. Rucker, 227 Ark. 869, 302 S.W.2d 287; McQuillin on Municipal Corporations, Vol. IV (1st Ed.), Sections 1725, 1801; Yokley, Municipal Corporations, Vol. 3, § 503, p. 215; 43 Am.Jur. 645, § 104; 50 A.L.R. 126.

The Texas cases support this rule of law. City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622; City of Wichita Falls v. Landers, Tex.Civ.App., 291 S.W. 696, writ ref.; Bexar County v. City of San Antonio, Tex.Civ.App., 352 S.W.2d 905, writ dism.; Town of Highland Park v. Guthrie, Tex. Civ.App., 269 S.W. 193, writ ref.; City of Houston v. Lockwood Inv. Co., Tex.Civ. App., 144 S.W. 685, writ dism.; City of Galveston v. Kenner, 111 Tex. 484, 240 S.W. 894.

In Bexar County, Texas v. City of San Antonio, Tex.Civ.App., 352 S.W.2d 905, the Court said:

"There is a presumption in favor of the validity of a municipal ordinance and the burden of showing that it is

invalid is upon the party attacking it, and unless such showing is clearly made the action of the city council in enacting the ordinance is conclusive and cannot be reviewed by the Court. City of Abilene v. Woodlock, Tex.Civ. App., 282 S.W.2d 736, error refused, certiorari denied, 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455.

"The County contends that the above two ordinances were not enacted for the purpose of making a reasonable charge, but for the purpose of raising revenue. The County in making this contention does not take into consideration the value, at the present time, of the City's sewerage collecting and treating system, its depreciation each year, the cost of replacing parts that can no longer be used, and the cost of making extensions to meet the rapidly growing population of the City. The burden was upon the County to show these things if it expected to establish the fact that the City's sewer charges were for revenue purposes, and not a charge for service rendered, but in fact a tax. These items must be taken into consideration in determining whether a sewer charge is excessive."

■ Evidence was admitted on the issue of the reasonableness of the rates and the trial court found them reasonable. On the record before us we cannot say that the trial court erred in this finding. The value of the system used in computing the rates included the properties to be acquired under the Trinity River contract. The anticipated revenue from the new water rates also included anticipated receipts from the sale of Trinity River water. If the contract should be found invalid, these items could not properly be considered in determining the reasonableness of the water rates established by the ordinance under attack. Since the evidence on this issue will probably be more fully developed at a new trial, no useful purpose will be served by further discussion of the evidence introduced at this trial.

Appellants have also attacked the water rate ordinance on the ground that they were denied procedural due process by reason of the fact that the City failed to hold a public hearing after proper notice at which time evidence could be presented, and, in fact, never received formal evidence of the necessity for a rate increase.

■ It is settled that "procedural due process requires that a rate-fixing body give due notice to the utility involved and grant a hearing before enacting an ordinance." Glen Oaks Utilities, Inc. v. City of Houston, 161 Tex. 417, 340 S.W.2d 783. In Connett et al. v. City of Jerseyville, 110 F.2d 1015, the Circuit Court of Appeals for the Seventh Circuit, held that the laws of Illinois as interpreted by the Supreme Court of that state made it clear that a "municipality, when fixing utility rates or charges, is performing a public function of the municipality and acting as a rate making body as distinguished from its private function as owner and operator of the utility." Appellants argue that if the City is acting as a rate making body, and not as owner of its water system, when it determines the charges to be made for water, our decisions on procedural due process require a holding that the water rate ordinance is void.

■ We find no violation of due process here. The holding of the Connett case, supra, is that a federal court cannot legislate for a municipality and that rate fixing is a legislative matter. Our Supreme Court held in Glen Oaks Utilities, Inc. v. City of Houston, supra, that procedural due process requires notice and hearing before a utility company can be deprived of its right to set the rates at which it will furnish services or commodities. Here the regulating agency and the one to be regulated are one and the same. It is not necessary to give notice to the *utility* involved. Nor do we think due process requires notice to the customers of the utility of a public hearing prior to setting charges for the services and commodities, since the customers have no such vested rights as

would make such protection appropriate. Art. 1175, Sec. 11, V.A.T.S., gives to home rule cities the power to prescribe rates for water furnished their customers. Art. II, Sec. 6, of the Houston City Charter, gives the City Council power to fix and regulate the price of water by ordinance. The water rate ordinance attacked here was enacted in the manner prescribed by law pursuant to powers granted to the City Council by the City Charter and the laws of the State of Texas. Neither the City Charter nor the Texas statutes require notice and hearing. As we have previously demonstrated, the courts of Texas are open to attacks on such ordinances if the rates prescribed are unreasonable, confiscatory or discriminatory. Under these circumstances no violation of due process is shown. Mulkey v. City of Kaufman, Tex.Civ.App., 286 S.W. 620, error ref.; State ex rel. Pan American Production Co. v. Texas City, Tex.Civ.App., 295 S.W.2d 697, aff'd 157 Tex. 450, 303 S.W.2d 780, appeal dism. 355 U.S. 603, 78 S.Ct. 533, 2 L.Ed.2d 523; Greer v. Railroad Commission of Texas, Tex.Civ.App., 117 S.W.2d 142; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633, error ref.; Leach v. Coleman, Tex.Civ.App., 188 S.W. 2d 220, error ref.; Shaw v. Lone Star Building & Loan Ass'n, 123 Tex. 373, 71 S.W.2d 863, opinion adopted.

Appellants suggest the possibility that this Court lacks jurisdiction of this appeal for the reason that the judgment does not specifically dispose of the issues raised in Cause No. 607,354–A. The order entered at a pre-trial hearing has been quoted previously.

Although the statement of facts reflects that the trial judge was of the opinion that the order required a joint trial of the issues relating to the referendum election and the validity of the bonds only, no further order was entered to this effect. In the final judgment entered in Cause No. 610,652 no mention is made of Cause No. 607,354–A. While the trial court could properly have consolidated these suits in their entirety by virtue of Rules 41 and 174, T.R.C.P., it did

not undertake to do so. Sec. 4 of Art. 717m authorizes the court, on motion, to enjoin the commencement of *any other action or proceeding* contesting the validity of the securities or the rates authorized for the payment of, and the revenues or property pledged to secure, such securities, and provides that it *shall* order a *joint hearing* or *trial* of *all such issues then pending* in any action or proceeding in any court in the state, and *may* order all such *actions* or *proceedings consolidated* with the pending suit for declaratory judgment. The order entered at the pre-trial hearing reflects that it was made in response to the mandate of the statute for a *joint* trial of *issues*. The order was too indefinite to give proper notice of the issues to be tried.

■ No final judgment could be entered in Cause No. 607,354–A by reason of the trial of certain issues in that case jointly with this cause since only one final judgment may be entered in a cause and since a judgment, to be final, must dispose of the entire case. The trial court made a finding of fact that the answer in this cause raised the identical issues and grounds of recovery alleged in Cause No. 607,354–A. However, since there was no proper order of consolidation and the judgment entered in Cause No. 610,652 does not purport to be a judgment in Cause No. 607,354–A, either final or interlocutory, we conclude that the judgment entered in Cause No. 610,652 is a final judgment. If we are in error in this reasoning and the order of consolidation entered in this cause, construed in light of the court's finding of fact previously referred to, is effective as an order consolidating the two causes, then the judgment entered either directly or by implication disposes of all issues raised in the consolidated cause and is a final judgment.

■ Appellants filed a plea in abatement based on the fact that Cause No. 607,354–A was filed prior to this suit and was then pending in another district court. It is appellants' contention that under the doctrine of Cleveland v. Ward, 116 Tex. 1, 285

S.W. 1063, jurisdiction of the subject matter having vested in the 125th District Court, the 55th District Court could not entertain jurisdiction to try this cause. We think, however, that Art. 717m specifically authorized this procedure and that such action was not beyond the legislative power. Under our construction of the statute the other matters presented by the plea in abatement present no error.

The City of Houston is authorized to issue its water system revenue bonds for the purpose set out in the bond ordinance by the provisions of Art. 1109a, V.A.T.S. It was stipulated that at the time Ordinance No. 62–1367, authorizing the issuance of the bonds, was adopted it was the purpose of the City of Houston to use $9,000,000.00 of the proceeds of such bonds in carrying out the obligations assumed by the City under the Trinity River Project contract dated September 9, 1959.

Appellants contend that if the Trinity River contract is valid, the City must issue its bonds under the authority granted by Article 1109e or Article 1109h, V.A.T.S. Art. 1109a, Sec. 7, authorizes the City of Houston to issue revenue bonds for the purpose of providing extensions, replacements, betterments, additions or improvements which in the judgment of the City Council are necessary to render adequate service. City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251; City of Houston v. Mann, 139 Tex. 640, 164 S.W.2d 548. We think it a matter of common knowledge that large cities are required to go beyond their city limits to secure adequate supplies of water. Certainly the erection of dams to impound water and of facilities for protecting and transporting water would adhere literally to the purposes authorized by Art. 1109a and the fact that these facilities would be erected outside of the city limits is immaterial. City of New Braunfels v. City of San Antonio, Tex.Civ.App., 212 S.W.2d 817, ref., n. r. e.; City of Dallas v. State, Tex.Civ.App., 28 S.W.2d 937, writ ref. It is not necessary for the bond ordinance to specify the particular improvements to be constructed or acquired. Garcia v. Duval County, Tex.Civ.App., 354 S.W.2d 237, error ref., n. r. e. Art. 1109e and Art. 1109h do not limit the authority of the City in issuing bonds under the provisions of Art. 1109a, since they may be construed as giving cumulative rights, and there will be no necessarily conflicting provisions.

Appellants contend that the trial court erred in finding Ordinance No. 62–728, prescribing rates to be charged for treated water, a properly enacted and valid ordinance. The City in its original petition alleged that the ordinance was properly enacted and that it is a valid ordinance despite the fact that efforts were made to file petitions to require the submission of said ordinance to popular vote at a referendum election under the provisions of Article VIIb of the Houston City Charter. The burden rested on the City to prove the validity of the ordinance. Evidence was produced sufficient to support the trial court's finding that the ordinance was validly enacted. Evidence was also introduced to show that referendum petitions were filed with the City Secretary, but the evidence is insufficient to show that the petitions were properly signed and verified. The Charter provides that if a petition protesting the enactment or enforcement of an ordinance signed by the required number of voters and properly verified, be filed with the City Secretary within a prescribed time limit, the ordinance shall be suspended from taking effect. No evidence was introduced sufficient to show that the petitions were, or were not, properly signed or verified. Since the City sought a declaration that the ordinance was valid, it had the burden of showing that the referendum petitions were insufficient.

In Denman v. Quin, Tex.Civ.App., 116 S.W.2d 783, error ref., the court said:

"* * * ordinances which must rest upon minute investigation of facts and figures, or application of expert, skilled,

or technical knowledge, or upon audits, or upon close and careful study or ascertainment or adjustment of masses of facts and figures, such as the elements entering into matters of rate making, cannot be efficiently initiated or passed upon by the public en masse, however intelligent or patriotic they may be."

The water rate ordinance was not subject to the referendum provision of the City Charter. Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S.W. 1106; Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321. The evidence, therefore, was sufficient to support the finding that the ordinance is valid.

Appellants have presented numerous other assignments of error that require no discussion in view of the disposition made of the points of error previously determined.

Appellee's motion to strike appellants' statement of facts is denied. The judgment of the trial court is reversed and this case is remanded for a new trial.