Opinion issued March 25, 2008
 











In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00172-CV
____________

DAVID NARMAH, Appellant

V.

WALLER INDEPENDENT SCHOOL DISTRICT, Appellee




On Appeal from 155th District Court
Waller County, Texas
Trial Court Cause No. 07-08-18984



 
O P I N I O N

          This is a restricted appeal from a final declaratory judgment in a bond-validation suit. Appellee, Waller Independent School District (“WISD”), has moved
to dismiss the restricted appeal of appellant, David Narmah. Both parties have fully
briefed the jurisdictional issue. Concluding that Narmah may not take a restricted
appeal from a judgment in this type of suit, we grant WISD’s motion and dismiss the
appeal. See Tex. R. App. P. 42.3(a).
Background
          On March 13, 2008, this Court granted WISD’s unopposed motion to consider,
as the record in this appeal, the record from a related appeal, Charleston v. Waller
Independent School District, which arose from the same suit, trial, and judgment. See
244 S.W.3d 555 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Because most of the
appellate record in both appeals is thus identical, we take some of the background
facts from the Charleston opinion, indicating by citation when we have done so.
          As we noted in Charleston:
 
On May 12, 2007, WISD voters approved the sale of school bonds
valued at $49.29 million for the “construction of a new elementary
school, conversion of Waller Junior High and Schultz Middle School to
6–8 grade campuses, addition of office space for technology, renovation
on all seven existing campuses, technology improvements, purchase [of]
school buses, and the construction [of] a new District stadium.”

Id. at 557. Dewayne Charleston, a Waller County taxpayer, sued WISD in Harris
County to invalidate the bonds for various reasons. See id. On August 20, 2007,
WISD filed, in Waller County, the underlying public-securities declaratory-judgment
suit that is common both to this appeal and the Charleston appeal. See id. at 558. 
Charleston intervened in WISD’s Waller County suit, which was tried on September
24, 2007. See id. On October 2, 2007, the trial court rendered judgment for WISD,
declaring, among other things, that WISD was authorized to issue the securities; that
the securities, when issued and executed as required by law, would be lawful, valid,
and binding; that the court had confirmed and approved the securities; that the May
12, 2007 special election was legally and validly held; that the judgment was binding
and conclusive on all class members, the Attorney General, the Comptroller, and “all
other interested parties”; and that the judgment was a permanent injunction against
future challenges to matters that were or could have been determined therein.
          Charleston was eventually dismissed from the suit for failure to have filed a
security bond. See Tex. Gov’t Code Ann. § 1205.104(a) (Vernon 2000). 
Charleston’s appeal to this Court is not relevant to the instant appeal except to render
understandable an alternative argument of WISD’s that is mentioned below. What
is relevant to the instant appeal is that, on January 7, 2008—just over three months
after the final judgment was signed—Narmah, another taxpayer in Waller County,
filed a notice of restricted appeal to the Texas Supreme Court, invoking the appellate
provision of chapter 1205 of the Texas Government Code (“the Act”),


 which chapter
concerns public-security declaratory-judgment actions. See Tex. Gov’t Code Ann.
§ 1205.068(b) (Vernon 2000) (“A party may take a direct appeal to the supreme court
as provided by [Texas Government Code] Section 22.001(c).”); id. § 22.001(c)
(Vernon 2004) (“An appeal may be taken directly to the supreme court from an order
of a trial court granting or denying an interlocutory or permanent injunction on the
ground of the constitutionality of a statute of this state.”).
          In early March 2008, however, Narmah filed a request with the supreme court
to dismiss his notice of appeal, explaining as follows:
Mr. Narmah did not intend to file a regular appeal, but instead intended
to file a restricted appeal from the trial court pursuant to Rules 30 and
57 of the Texas Rules of Appellate Procedure, and a restricted appeal
from the Court of Appeals pursuant to Rule 30 of the same rules. Under
Rule 26.1(c), a party filing a restricted appeal must submit the notice of
appeal “within six months after the judgment or order is signed.” Mr.
Narmah filed his notice of appeal within the six-month limit . . . . 
 
Upon review of Mitchell v. Purolator Security, Inc., however, Mr.
Narmah has concluded that it is unclear whether this court has
jurisdiction to hear his claims on direct appeal. 515 S.W.2d 101, 104
(Tex. 1974) (direct appeal dismissed because injunction was not granted
on constitutional grounds). On the other hand, Mr. Narmah may clearly
file a restricted appeal to the Court of Appeals. Accordingly, he intends
to file such a restricted appeal with the Court of Appeals not later than
this week. Mr. Narmah therefore wishes to withdraw his Notice of
Appeal to this Court and asks that the matter be dismissed.
          Within days, Narmah filed a notice of appeal in the trial court, for appeal to the
court of appeals, expressly reciting both that his was a “restricted appeal . . . filed
within six months after the judgment in this case was signed” and that “[p]ursuant to
Section 1205.068(e) of the Texas Government Code [the appeal provision of Act],
this appeal is governed by the rules of the Texas Supreme court for accelerated
appeals in civil cases.” Narmah’s appeal was assigned to this Court. On March 11,
2008, Narmah filed an amended notice of appeal that removed any reference to the
Act, reciting that he “wishes to clarify that this is a restricted appeal filed pursuant to
Rule 30, and to further clarify that this appeal is not filed under Chapter 1205 of the
Texas Government Code.” (Emphasis in original.)
          In his appellant’s brief, Narmah complains that (1) “the trial court and this
Court lacked personal jurisdiction over [Narmah] (and most other parties), therefore
the orders, judgments, and mandate are void”;


 (2) “State courts lack jurisdiction to
enjoin parties from pursuing in personam claims in federal court, therefore the orders
of the trial court are void”; (3) “Because [WISD] did not properly provide notice of
its board of trustees meetings to the county clerk, as required by the Texas Open
Meetings Act, the board’s votes approving the bond election and the sale of the bonds
should be voided”; and (4) “the trial court’s judgment ordering the Attorney General
to approve the bond was in error.”
          WISD has moved to dismiss Narmah’s appeal, arguing that this court lacks
subject-matter jurisdiction because (1) the Act allows only an accelerated appeal filed
within 20 days of the judgment’s signing, rather than a restricted appeal, and,
alternatively, (2) Narmah, whom the Act makes a class member, in effect participated
below through counsel for Charleston, thus precluding a restricted appeal in any
event. Narmah replies that (1) the accelerated-appeal provision of the Act is not
mutually exclusive with a restricted appeal, allowing him to pursue the latter if he
meets its criteria, and (2) Charleston’s counsel did not represent the statutory class
below, so that Narmah’s restricted appeal is not precluded for Narmah’s having
participated below through Charleston’s counsel. 
          Of WISD’s two arguments, we need to address only the first. That argument
requires us to interpret the Act.
Standard of Review
          “Statutory interpretation is a question of law.” Cardinal Health Staffing
Network, Inc. v. Bowen, 106 S.W.3d 230, 237 (Tex. App.—Houston [1st Dist.] 2003,
no pet.). “We review questions of law . . . de novo.” Hong Kong Dev., Inc. v.
Nguyen, 229 S.W.3d 415, 458 (Tex. App.—Houston [1st Dist.] 2007, no pet.).
          “Our primary goal is to ascertain and effectuate the Legislature’s intent.” 
Cardinal Health Staffing Network, Inc., 106 S.W.3d at 237. In carrying out this duty,
“we begin with the statute’s plain language because we assume that the Legislature
tried to say what it meant and, thus, that its words are the surest guide to its intent.” 
Id. at 237–38. “In ascertaining legislative intent, we do not confine our review to
isolated statutory words, phrases, or clauses, but we instead examine the entire act.” 
Id. at 238. “We may also consider, among other things, the statute’s objectives;
common law, former law, and similar provisions; and the consequences of the
statutory construction.” Id.
Jurisdiction: Accelerated vs. Restricted Appeal Under the Act
          Under the Act, an issuer


 such as WISD may seek a declaratory judgment for
determining the issuer’s authority to issue public securities, the legality and validity
of each public-security authorization relating to the public securities, the legality and
validity of each expenditure or proposed expenditure of money relating to the public
securities, and the legality and validity of the public securities themselves. Tex.
Gov’t Code Ann. § 1205.021(1)–(4) (Vernon 2000). The proceeding is in rem and
is a class action; it is binding on all persons who reside in the issuer’s territory, who
own property that is located therein, who are taxpayers of the issuer, or who “have a
claim of right, title, or interest in any property or money to be affected by the public
security authorization or the issuance of the public securities.” Id. § 1205.023
(Vernon 2000). Once the court has given notice of the bringing of the action as
required by the Act, each person named above is made a party to the action, and “the
court has jurisdiction over each person to the same extent as if that person were
individually named and personally served in the action.” Id. § 1205.044(2) (Vernon
2000). One made a party by such notice may answer or intervene in the action. Id.
§ 1205.062 (Vernon 2000).
          An action under the Act is “a cause of action or a civil suit” that is “governed
by the Rules of Civil Procedure promulgated by the Supreme Court except insofar as
specific changes are made by [the Act].” Hatten v. City of Houston, 373 S.W.2d 525,
533, 535 (Tex. Civ. App.—Houston 1963, writ ref’d n.r.e.) (emphasis added). The
Act itself provides that “[t]o the extent of a conflict or inconsistency between this
chapter [the Act] and another law, this chapter controls.” Tex. Gov’t Code Ann.
§ 1205.002(a) (Vernon 2000).
          The purpose of the Act is to provide a “speedy final resolution of all
contestants’ claims” in public-securities declaratory-judgment proceedings and to
dispose of such proceedings “with dispatch.” Buckholts Indep. Sch. Dist. v. Glaser,
632 S.W.2d 146, 150–51 (Tex. 1982). “[I]t is apparent that the Legislature, in
enacting [the Act’s predecessor], intended to provide a method of adjudicating the
validity of public securities which would be more efficient and quicker than the
procedures theretofore available,” i.e., the Legislature intended by the Act to provide
“a speedy termination of this type of litigation.” Hatten, 373 S.W.2d at 534–35.
          This purpose is reflected throughout the Act’s provisions. For example, the
trial court must try the action “with the least possible delay.” Tex. Gov’t Code Ann.
§ 1205.065(a) (Vernon 2000). No legislative continuance is allowed, as might
otherwise apply under the Texas Rules of Civil Procedure and the Texas Civil
Practice and Remedies Code. Id. § 1205.069 (Vernon 2000); see Tex. Civ. Prac. &
Rem. Code Ann. § 30.003(b) (Vernon Supp. 2007); Tex. R. Civ. P. 254. The trial
court may, before entry of final judgment, grant the issuer’s motion to require that any
opposing party other than the Attorney General be dismissed unless that person files
a bond with sufficient surety “for any damage or cost that may occur because of the
delay caused by the continued participation of the opposing party or intervenor in the
action if the issuer finally prevails . . . .” Tex. Gov’t Code Ann. § 1205.101(a)
(Vernon 2000). If bond is granted but not filed within 11 days, the court must dismiss
the opposing party or intervenor. Id. § 1205.104(a) (Vernon 2000). 
          The same legislative purpose is reflected in the Act’s provisions concerning
appeal and effect of final declaratory judgment. For instance, the declaratory
judgment rendered by the trial court may be appealed to either the court of appeals
or to the supreme court, depending on the challenges raised, but in either case, the
appeal is “governed by the rules of the supreme court for accelerated appeals in civil
cases and takes priority over any other matter, other than writs of habeas corpus,
pending in the appellate court.” Id. § 1205.068(d), (e) (Vernon 2000). The rules
applicable to accelerated appeals in civil cases require that the appeal be perfected no
more than 20 days after the judgment is signed. See Tex. R. App. P. 26.1(b) (“[I]n an
accelerated appeal, the notice of appeal must be filed within 20 days after the
judgment or order is signed.”); Tex. R. App. P. 57.1 (“Except when inconsistent with
a statute or this rule, the rules governing appeals to courts of appeals also apply to
direct appeals to the Supreme Court.”). The appellate court is expressly instructed to
“render its final order or judgment with the least possible delay.” Tex. Gov’t Code
Ann. § 1205.068(e); see id. § 1205.105 (Vernon 2000) (invoking section 1205.068’s
procedure and expedited timetable for appeal from setting of bond or dismissal for
failure to post bond in public-securities declaratory-judgment action). Finally, a final
judgment in such a public-securities declaratory-judgment action is, as to each matter
that was or could have been adjudicated, binding and conclusive against the issuer,
the Attorney General, the Comptroller, and any party to the action and functions as
a permanent injunction against “the filing by any person of any proceeding contesting
the validity” of various matters related to the adjudication or to the securities. Id.
§ 1205.151(b), (c) (Vernon 2000).
          WISD first argues that an accelerated appeal under section 1205.068(e) and
Texas Rule of Appellate Procedure 26.1(b) is the exclusive way to appeal a final
declaratory judgment to an intermediate appellate court under the Act. Therefore,
argues WISD, Narmah may not take a restricted appeal from the judgment. WISD
opines that construing section 1205.068 to allow taxpayers like Narmah to take a
restricted appeal would eviscerate the speedy and final determination that the
Legislature intended for proceedings under the Act. This issue that WISD raises
appears to be one of first impression.
          The Legislature clearly intended for all requirements of the Act to be speedily
conducted, and with good reason: with extended litigation, public improvements
could be delayed, precluded, or rendered far more expensive. Cf. Leonard v. Cornyn,
47 S.W.3d 524, 528 (Tex. App.—Austin 1999, pet. denied) (stating same with regard
to statute requiring Attorney General’s approval of bonds, when statute provided that
said approval, plus subsequent registration of bonds, rendered bonds valid, binding,
enforceable, and incontestable in any court or other forum for any reason). This is
why the Legislature provided that “[a]n appeal under this section [1205.068] is
governed by the rules . . . for accelerated appeals” and that such an appeal would take
priority in the appellate court over all matters except habeas corpus. Tex. Gov’t
Code Ann. § 1205.068(e). 
          The rules for accelerated appeals provide that the appellant perfect his appeal
within 20 days after the judgment is signed. Tex. R. App. P. 26.1(b). In contrast, a
party meeting certain conditions


 may take a restricted appeal in a civil case within
six months after the judgment is signed. Tex. R. App. P. 26.1(c). Given the vast
difference in the time to perfect accelerated and restricted appeals, as well as the
Act’s overarching purposes, there is but one reasonable reading of section 1205.068:
that the Legislature intended that any party appealing an order or judgment rendered
in a suit brought under the Act do so under the rules for accelerated appeals,
including the 20-day timeline for perfecting such an appeal. See Tex. Gov’t Code
Ann. § 1205.068(a), (e). We reach this conclusion because the Act’s dual purposes
of speedy determination and finality would be completely undermined by allowing
a restricted appeal: a restricted appeal could be perfected any time within six months
after the judgment’s rendition, whereas every provision of the Act is geared to
providing the fastest adjudication possible. In light of these purposes of the Act, it
is significant that section 1205.068(e) mentions only accelerated appeals. We believe
that the Legislature mentioned only accelerated appeals because it meant to allow
only accelerated appeals. Given the purposes of the Act, had the Legislature meant
to allow far slower restricted appeals, it would have mentioned them expressly; it did
not.
          We recognize that a public-securities declaratory-judgment action is a “civil
suit,” which is “governed by the Rules of Civil Procedure” generally, Hatten, 373
S.W.2d at 533, 535, and also that restricted appeals are generally allowed in civil
suits, see Tex. R. App. P. 26.1(c). Nonetheless, the Act’s provisions control when the
rules generally applicable to civil suits are inconsistent with its provisions. See Tex.
Gov’t Code Ann. § 1205.002(a) (“To the extent of a conflict or inconsistency
between this chapter and another law, this chapter controls.”); Hatten, 373 S.W.2d
at 535. In reviewing whether rule 26.1(c) and the Act’s appellate provision are
inconsistent, we do not read the Act’s appellate provision in a vacuum, but instead
with an eye toward the purpose of the Act: that a speedy and final determination be
made. See Cardinal Health Staffing Network, Inc., 106 S.W.3d at 238 (providing that
appellate court construing statute may consider “the statute’s objectives” and “the
consequences of the statutory construction”). The Act requires a speedy appeal and
resolution; restricted appeals circumvent these objectives. We thus conclude that
Texas Rules of Appellate procedure 26.1(c) and 30 are inconsistent with section
1205.068(e) of the Act, so that section 1205.068(e) controls in an appeal from a
judgment rendered under the Act. See Tex. Gov’t Code Ann. § 1205.002(a).
          For all of these reasons, we hold that the Act’s plain language precludes
restricted appeals from the judgments and orders that the Act allows to be appealed. 
See id. § 1205.068(a), (e); cf., e.g., Buckler v. Turbeville, 17 Tex. Civ. App. 120, 123,
43 S.W. 810, 811 (Tex. Civ. App.—Dallas 1897, writ dism’d w.o.j.) (in concluding
that writ of error could not be used to appeal judgment in election proceeding, when
election-contest appeals were given statutory precedence in appellate courts over
other matters, reasoning, “We think it clearly appears that it was the intention of our
lawmakers that controversies over elections should be speedily terminated, and for
this reason the writ of error was not provided as the means of revising trials in
contested elections. . . . Why make all these provisions to secure a hasty termination
of the controversy, and at the same time give 12 months in which to carry the case up
by writ of error?”);


 cf. also City of Lubbock v. Isom, 615 S.W.2d 171, 172 (Tex.
1981) (holding that no bill of review could be taken by party to action in which
public-securities declaratory judgment was rendered because that party had not
appealed, which statutorily barred that party from filing bill-of-review proceeding). 
We thus hold that we lack jurisdiction over Narmah’s restricted appeal. Because we
lack jurisdiction over Narham’s restricted appeal, we may not consider any of his
appellate challenges relating to the underlying judgment, including those issues
contending that the judgment is void and that notice by publication is generally
unconstitutional, which he contends render the underlying judgment void. See Rio
Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex., 670 S.W.2d 399, 402
(Tex. App.—Austin 1984, writ ref’d n.r.e.) (dismissing appeal in suit brought under
the Act for lack of subject-matter jurisdiction and thus not reaching appellant’s
constitutional challenge to predecessor of the Act); see also Lund v. State, 163 Tex.
102, 103, 352 S.W.2d 457, 458 (Tex. 1962) (“Because of the failure to file a timely
motion for new trial, the appeal failed and the Court of Civil Appeals was without
jurisdiction to determine whether or not the trial court’s judgment is void.”); Prairie
View A&M Univ. v. Dickens, 243 S.W.3d 732, 736 (Tex. App.—Houston [14th Dist.]
2007, no pet.) (“Even if a trial court signs an interlocutory order that is void for lack
of subject-matter jurisdiction, this court still has no jurisdiction to entertain an
interlocutory appeal from that order absent statutory authority.”).
          Narmah raises three arguments in response. First, he asserts that his appeal is
not brought under the Act, but is instead brought as a restricted appeal, as his
amended notice of appeal in this Court demonstrates. We agree with this
characterization of his appeal, but this is exactly the problem. As we have held
above, one cannot invoke the rules for restricted appeals to challenge a judgment
rendered in a suit under the Act. Rather, one must appeal in accordance with section
1205.068 of the Act, which invokes the rules for accelerated appeals, not those for
restricted appeals. Accordingly, Narmah cannot use a restricted appeal to do what the
Act requires be done by accelerated appeal.
          Second, Narmah asserts that “[i]n Section 1205.068 itself, nothing in the text
purports to foreclose other avenues of relief such as restricted appeals or writs of
mandamus.” But the Act expressly provides that its provisions control to the extent
that they conflict or are inconsistent with any other law. See Tex. Gov’t Code Ann. 
§ 1205.002(a). We have held above that the appellate rules allowing restricted
appeals in civil cases generally are inconsistent both with the Act’s purposes and with
its appellate provisions. Accordingly, even though section 1205.068 itself does not
expressly state that restricted appeals are foreclosed, that was the Legislature’s intent,
as revealed in the Act’s plain language.
          Third, Narmah argues that “[i]n the present case, [he] didn’t even have the
option of filing an accelerated appeal because he was not a named party, thus a
restricted appeal or a writ of mandamus are his only avenues of relief.” (Emphasis
added.) From this premise, Narmah concludes that “[a]s a matter of constitutional
necessity, these avenues of relief must be preserved or non-parties will have no
means of attacking facially void judgments against them.” (Emphasis added.) 
Narmah’s argument is contrary to the Act’s plain language, which expressly makes
taxpayers (like Narmah), to whom the required publication notice is given, class
members in these actions; expressly makes them parties to the action after the
required notice is given, so that the court “has jurisdiction over each person to the
same extent as if that person were individually named and personally served in the
action”; and renders judgments in these actions binding and conclusive on these
individuals, whether or not they were actually named in the proceeding. See Tex.
Gov’t Code Ann. §§ 1205.023(2)(c), 1205.041, 1205.043, 1205.044, 1205.151(b),
(c). Although parties to whom the required publication notice is given may answer
or intervene, they do not have to do so for the above effects to occur. See id.
§§ 1205.044, 1205.062. Finally, the Act allows “[a]ny party to an action under this
chapter” to appeal the judgment—and, as we have explained above, “a party”
includes a statutory class member to whom the required notice was given, even if that
person was not individually named, did not answer, or did not intervene. See id.
§ 1205.068(a). Narmah was thus eligible to have taken an accelerated appeal from
the final judgment under the authority of section 1205.068.



Conclusion
          We grant WISD’s motion and dismiss the restricted appeal for want of subject-matter jurisdiction.
 
Tim Taft
Justice

Panel consists of Justices Taft, Nuchia, and Keyes.